# 2004 DTA 140

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE HUMACAO

AIRPORT SHOPPES AND HOTEL CORP.
Demandante-Recurrido

v.

PALMAS DEL MAR PROPERTIES, INC., PALMAS DEL MAR ARCHITECTURAL REVIEW BOARD, INC.; JOHN DOE COMPAÑÍA DE SEGUROS,
RICHARD ROE COMPAÑÍA DE SEGUROS
Demandados-Peticionarios

--------------------------------------------

AIRPORT SHOPPES AND HOTEL CORP.
Demandante-Recurrido

v.

PALMAS DEL MAR PROPERTIES, INC., PALMAS DEL MAR ARCHITECTURAL REVIEW BOARD, INC.; JOHN DOE COMPAÑÍA DE SEGUROS, RICHARD ROE COMPAÑÍA DE SEGUROS
Demandados-Peticionarios

FIRST BANK
Interventor-Recurrido

Núms. Cons. KLCE-04-01093 / KLCE-04-01096

San Juan Puerto Rico, a 13 de septiembre de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Colón Birriel y Hernández Torres

Hernández Torres, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

Comparece ante nos Palmas del Mar Architectural Review Board, Inc. (en adelante Palmas del Mar Architectural) y Palmas del Mar Properties, Inc. (en adelantes Palmas del Mar Properties), partes codemandada-peticionarias, y nos solicita la revisión de una Resolución emitida por el Tribunal de Primera Instancia, Sala de Humacao (Hon. Luis A. Amorós Álvarez, Juez) el 31 de marzo de 2004, notificada y archivada en autos el 2 de abril de 2004. Mediante la referida resolución, el foro de instancia declaró ha lugar la solicitud de *injunction* preliminar, como permanente de la parte demandante-recurrida, Airport Shoppes and Hotel Corp. (en adelante Airport Shoppes). En consecuencia, el Tribunal de Primera Instancia ordenó a Palmas del Mar Architectural que debía cesar y desistir de obstaculizar el uso de la servidumbre de estacionamiento traspasada a Airport Shoppes.

Por tratarse los recursos KLCE-04-01093 y KLCE-04-01096 de las mismas partes y los aquí peticionarios acudir de la misma resolución, procedemos a consolidar los recursos al amparo de la Regla 80.1 de nuestro Reglamento, 2004 J.T.S. 112, a la pág. 1349, promulgado al amparo de la Ley Núm. 201 de 22 de agosto de 2003, mejor conocida como la "*Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*".

Luego de estudiados los hechos, así como el derecho aplicable, denegamos la expedición de los autos de *certioraris*.

### I

Palmas del Mar Properties, parte codemandada-peticionaria, es dueña del complejo residencial conocido como Palmas del Mar en Humacao, en el cual se encuentra el Hotel Candelero, que también fue propiedad de Palmas del Mar Properties hasta el año 1996. A los fines de proveer al Hotel Candelero un área de estacionamiento, Palmas del Mar Properties utilizaba otros terrenos de su propiedad que colindaban o estaban cerca del hotel. ██

Para el año 1996, Palmas del Mar Properties, parte codemandada-peticionarias, era dueña del Hotel Candelero así como de la Parcela A-1, donde enclava dicho hotel, y la Parcela de terreno número 10,151, la cual contiene las áreas de estacionamiento (Área de Estacionamiento 2 o Área de Estacionamiento del Hotel). Además, Palmas Country Club, Inc. (en adelante Palmas Country Club) era dueña de otra parcela de terreno número 23,658 denominada Golf Clubhouse Parcela, la cual contiene áreas para uso de estacionamiento (Áreas de Estacionamiento 1 o Área de Estacionamiento de los Empleados).

El 20 de diciembre de 1996, Palmas del Mar Properties, parte codemandada-peticionaria, le vendió a Bluewater Palmas, Ltd. el Hotel Candelero, así como la parcela donde esta enclavado el mismo. La descripción registral de la propiedad vendida es la siguiente:

"-----"*RURAL: Parcel A-1 (Candelero Hotel): Tract of land of irregular shape located on the Candelero Abajo Ward of the Municipality of Humacao, composed of four point two six zero one (4.2601) "cuerdas" equivalent to sixteen thousand seven hundred forty-four point zero six two eight (16,744.0628) square meters. Bounded on the North with Parcel C, on the West with Beach Village Road, on the East with Parcel C and Beach Village V and on the South with Beach Village V and Beach Village Road.*"-----------------------------------

*(Ap. Certiorari, KLCE-04-01093, a la pág. 42.)*

Ese mismo día, Palmas del Mar Properties, parte codemandada-peticionaria, y Palmas Country Club otorgaron la escritura número 36 ante la notario Melba I. Acosta Febo sobre Constitución de Servidumbre de Estacionamiento y Subordinación de Hipoteca en la cual constituyeron sobre sus respectivos predios, como predios sirvientes, una servidumbre de estacionamiento a favor de Bluewater. En específico, la tercera, decimocuarta y vigésimo segunda cláusula de dicha escritura disponen lo siguiente:

*"---THIRD: The Parking Easement. To ensure the integral operation of the Candelero Hotel located on the Hotel Lot, Grantor hereby constitutes over the Golf Clubhouse Parcel and over Property 10,151 (collectively the "Properties"), as servient tenements, a non-exclusive real easement ("servidumbre real") and right to use the Parking Area 1 and Parking Area 2 (collectively the "Parking Areas"), upon and in favor of the Hotel Lot, as dominant tenement, subject to the terms and conditions set forth herein (the "Easement"). The Easement shall be for the purpose of ingress, egress, access and parking for vehicular or pedestrian traffic of the guests, executives, clients, suppliers, customers, patrons and employees of the Candelero Hotel. The Easement is non-exclusive such that Grantor and its guests, patrons, agents, clients, employees, executives and suppliers may make use of the Parking Areas provided, however, that Grantor may not grant use rights to third parties without Grantee's consent.---------------------------------------*

*[...]*

*---EIGHT: Use of Parking Areas. The Hotel Parking Area shall be used by Grantee for parking by guests, Grantee's executives and other invitees of the Candelero Hotel, and the Employee parking Area shall be used by Grantee's employees and by Grantor's employees. Grantee shall not charge any person or entity, other that its guests for use of the Parking Areas. In the event that Grantee does not use the Parking Areas as provided above, Grantor has the right to terminate this Easement in accordance with Article SIXTEENTH of this deed.------------------------------------*

*[...]*

*---FOURTEENTH: Assignment or Sublet. Grantee shall not assign its rights hereunder without prior written consent of Grantor, except to an affiliate of Grantee to whom Grantee transfers its interest in the Candelero Hotel or any Lender.----------------------------------------*

*[...]*

*---TWENTY-SECOND: Successors and permitted Assigns. Except as otherwise specifically provided in this Deed, the terms of this Deed shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns, provided, that, except as expressly provided herein, the rights of the Grantee under this Deed shall not be assignable."* [Énfasis suplido.]

(Ap. *Certiorari*, a las págs. 44-46, 49, 53.)

Bluewater, por su parte, financió la transacción a través del Banco Santander. Luego de un tiempo, Bluewater incumplió con los pagos del contrato de préstamo hipotecario suscrito con Banco Santander, por lo cual este último instó acción en cobro de dinero y ejecución de hipoteca en el caso civil número HSCI200200065 en el Tribunal de Primera Instancia, Sala de Humacao. Como resultado de dicho procedimiento, el 25 de julio de 2002, el foro de instancia dictó sentencia autorizando al Banco Santander a llevar a cabo la correspondiente subasta para ejecutar la propiedad del Hotel Candelero que garantizaba el pagaré hipotecario vencido por la cantidad de seis millones quinientos mil dólares ($6,500,000.00).

El 3 de abril de 2003, Palmas del Mar Properties, parte codemandada-peticionaria, le notificó al Banco Santander que toda vez que el Hotel Candelero había cerrado y Bluewater no estaba utilizando las áreas de estacionamiento conforme a lo dispuesto en la octava cláusula de la Escritura de Servidumbre de Estacionamiento, daba por terminada la misma en el término de treinta (30) días si el banco no cesaba su incumplimiento. Además, Palmas del Mar Properties, parte codemandada-peticionaria, le advirtió al Banco Santander que no podía traspasar a un tercero la servidumbre de estacionamiento sin su previo consentimiento por escrito.

El 9 de septiembre de 2003, mediante la Escritura Número 36 de Compraventa otorgada ante la notario Arline V. Bauzá Figueroa, el Banco Santander le vendió a Airport Shoppes, parte demandante-recurrida, la Parcela A-1 conjuntamente con el Hotel Candelero que enclava en dicho predio de terreno.

El 12 de septiembre de 2003, Palmas del Mar Properties, parte codemandada-peticionaria, le notificó a Airport Shoppes, parte demandante-recurrida, que daba por terminada y extinguida la servidumbre de estacionamiento. Al respecto explicó que Banco Santander ni Airport Shoppes habían solicitado el previo consentimiento por escrito de Palmas del Mar Properties antes de efectuar el traspaso de la servidumbre de estacionamiento.

Así las cosas, el 16 de septiembre de 2003, Airport Shoppes, parte demandante-recurrida, le envió una misiva a Palmas del Mar Properties, parte codemandada-peticionaria, en la cual le expresó que si no retiraba el aviso de terminación de servidumbre podría instaurar una acción judicial a esos efectos. (Ap. *Certiorari*, KLCE-04-01093, a las págs. 60-62.)

El 15 de octubre de 2003, Banco Santander y Airport Shoppes otorgaron la Escritura número cuarenta y dos (42) de Acta Aclaratoria. Mediante la referida Acta Aclaratoria, Banco Santander expresó que al venderle a Airport Shoppes la Parcela A-1, le vendió, cedió y traspaso cualquier derecho transferible que ostentare sobre la servidumbre voluntaria de estacionamiento mencionada en la tercera cláusula del Acta Aclaratoria. (Ap. *Certiorari*, KLCE-04-01093, a las págs. 28-29.)

El 21 de enero de 2004, Airport Shoppes, parte demandante-recurrida, presentó ante el foro de instancia demanda de sentencia declaratoria, acción reivindicatoria, monopolio, interferencia torticera con relaciones contractuales, *injunction* y daños y perjuicios. (Ap. *Certioraris*, KLCE-04-01093, a las págs. 1-17; KLCE-04-01096, a las págs. 398-414.) Entre otras cosas, Airport Shoppes, parte demandante-recurrida, alegó que la Parcela A-1 donde esta enclavado el Hotel Candelero que adquirió de Banco Santander, mediante ejecución de hipoteca, tiene constituida a su favor una servidumbre de estacionamiento como predio dominante y Palmas del Mar Properties le niega ese derecho por entender que la servidumbre no es trasferible sin su previo consentimiento, al amparo de la cláusula decimocuarta de la Escritura de Constitución de Servidumbre de Estacionamiento.

Posteriormente, el 20 de febrero de 2004, Airport Shoppes, parte demandante-recurrida, presentó ante el Tribunal de Primera Instancia una Moción Solicitando Interdicto (*"Injunction"*) Preliminar. (Ap. *Certiorari*, KLCE-04-01093, a las págs. 68-80; KLCE-04-01096, a las págs. 375-387.) En la referida petición, Airport Shoppes, parte demandante-recurrida, planteó que Palmas del Mar Properties y Palmas del Mar Arquitectural, desde el momento que adquirieron el Hotel Candelero, han estado negándole el derecho de uso y acceso a dicho espacio; es decir, negándole lo que constituye la servidumbre real de estacionamiento, a pesar de que este derecho real consta en escritura pública. En específico, le solicitan al tribunal aquí recurrido que les conceda un remedio rápido y eficaz para hacer valer sus derechos, en este caso: (i) el derecho real de servidumbre; (ii) el poder continuar con el proyecto de remodelación y apertura del hotel; (iii) la eliminación de requisitos de estacionamiento con exclusividad en violación a las leyes antimonopolísticas del país; (iv) la adecuada compensación de los daños ya ocasionados y que ha sufrido, y que continuará sufriendo la parte demandante

mientras no se conceda el remedio interdictal solicitado.

Así las cosas, el 24 de febrero de 2004, Airport Shoppes, parte demandante-recurrida, solicitó una vista urgente la cual el foro de instancia señaló para el 8 de marzo de 2004. (Ap. *Certiorari*, KLCE-04-01093, a las págs. 91-92; KLCE-04-01096, a las págs. 373-374.)

El 5 de marzo de 2004, la parte aquí demandada-peticionaria, Palmas del Mar Properties, contestó la demanda y reconvino. Dicha parte, en la reconvención, argumentó que la servidumbre de estacionamiento está sujeta a la condición resolutoria que establece la cláusula decimocuarta de la Escritura de Constitución de Servidumbre de Estacionamiento; la cual prohíbe su traspaso sin el previo consentimiento por escrito de Palmas del Mar Properties.

Por su parte, el 8 de marzo de 2004, Palmas del Mar Architectural, parte codemandada-peticionaria, también presentó ante el foro de instancia su contestación a la demanda. (Ap. *Certiorari*, KLCE-04-01096, a las págs. 329-334.) Ese mismo día, Palmas del Mar Properties, parte codemandada-peticionaria, presentó su escrito en oposición a la solicitud de interdicto. También ese día, se celebró una vista en la cual todas las partes tuvieron la oportunidad de argumentar sus respectivas posiciones.

Luego, First Bank de Puerto Rico solicitó intervención en el pleito al amparo de la Regla 21 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 21; pues fue la institución bancaria que financió la transacción entre Banco Santander y Airport Shoppes. (Ap. *Certiorari*, KLCE-04-01093, a las págs. 139-142; KLCE-04-01096, a las págs. 209-211.)

Finalmente y luego de múltiples trámites procesales, el 31 de marzo de 2004, el Tribunal de Primera Instancia dictó una Resolución mediante la cual concluyó que la servidumbre de estacionamiento constituida por Palmas del Mar Properties, parte codemandada-peticionaria, fue una predial y voluntaria y no personal, ya que la misma fue establecida en atención a la finca misma para servirle de estacionamiento al Hotel Candelero y no a su antiguo dueño Bluewater. (Ap. *Certiorari* KLCE-04-01093, a la pág. 219; KLCE-04-01096, a la pág. 148.) Además, el foro de instancia concluyó que la servidumbre de estacionamiento constituida entre Palmas del Mar Properties, parte codemandada-peticionaria, a favor de Bluewater se hizo en atención al Hotel Candelero, lugar importante e indispensable para la operación de este tipo de negocio. (Ap. *Certiorari* KLCE-04-01093, a las págs. 220-221; KLCE-04-01096, a las págs. 149-150.) También, el Tribunal de Primera Instancia concluyó que la parte codemandada-peticionaria, Palmas del Mar Properties, es el predio sirviente y a su vez es uno inseparable e indivisible del predio dominante ahora perteneciente a la parte aquí demandante-recurrida, Airport Shoppes, la servidumbre continúa a favor de este último. (Ap. *Certiorari* KLCE-04-01093, a la pág. 221; KLCE-04-01096, a la pág. 150.) Por último, el foro aquí recurrido determinó que la condición resolutoria impuesta en la escritura de constitución de servidumbre de estacionamiento es una contraria a derecho que no es de aplicación a los hechos del caso de autos, entendiendo que el Banco Santander le transfirió a Airport Shoppes el dominio de la propiedad así como el de la servidumbre de estacionamiento. (Ap. *Certiorari* KLCE-04-01093, a la pág. 221; KLCE-04-01096, a la pág. 150.) A esos efectos, el foro de instancia declaró con lugar la solicitud de interdicto e *injunction* preliminar como permanente ordenándole así a los codemandados-peticionarios, Palmas del Mar Properties, y Palmas del Mar Architectural, cesar y desistir inmediatamente de obstaculizar y entorpecer a la parte demandante-recurrida, Airport Shoppes, hacer uso de la servidumbre de estacionamiento. (Ap. *Certiorari* KLCE-04-01093, a la pág. 221; KLCE-04-01096, a la pág. 150.)

El 15 de abril de 2004, Palmas del Mar Properties, parte codemandada-peticionaria, presentó ante el foro de instancia Moción de Reconsideración. Palmas del Mar Properties, mediante la referida moción en solicitud de reconsideración, argumentó que el negocio jurídico contempla una servidumbre onerosa sujeta a una condición resolutoria y la misma se extinguió de manera automática *o ipso iure* en virtud del Artículo 482(4) del Código

Civil, 31 L.P.R.A. sec. 1681. (Ap. *Certiorari* KLCE-04-01093, a las págs. 223-224; KLCE-04-01096, a las págs. 126-136.) Al día siguiente, el foro de instancia acogió la moción en solicitud de reconsideración y señaló una vista para su discusión. (Ap. *Certiorari* KLCE-04-01093, a las págs. 234-235.) Por su parte, Palmas del Mar Architectural, parte codemandada-peticionaria, presentó también moción en solicitud de reconsideración. (Ap. *Certiorari*, KLCE-04-01096, a las págs. 45-62.) El 23 de abril de 2004, Airport Shoppes, parte demandante-recurrida, se opuso a la solicitud reconsideración de Palmas del Mar Propertries, parte codemandada-peticionaria.(Ap. *Certiorari* KLCE-04-01093, a las págs. 236-242.)

Luego de varios trámites procesales, el 7 de julio de 2004, el Tribunal de Primera Instancia declaró no ha lugar las mociones de reconsideración presentada por Palmas del Mar Arquitectural y Palmas del Mar Properties, partes codemandadas-peticionarias, por considerar correcta su resolución de 31 de marzo de 2004.

El 10 de agosto de 2004, Palmas del Mar Properties, parte aquí codemandada-peticionaria, inconforme con dicha determinación, presentó ante nos el recurso de *certiorari* KLCE-04-01093. En el mismo argumenta que se cometieron los siguientes errores:

"*Erró el Tribunal de Primera Instancia al determinar que la servidumbre de estacionamiento que PDMPI voluntariamente constitu[ida] en la Escritura de Servidumbre como resultado del negocio jurídico con Bluewater es una predial, y no una personal a favor de Bluewater como dueña y operadora del Hotel Candelero.*

*Erró el Tribunal de Primera Instancia al determinar que la condición resolutoria consignada en la cláusula 14 de la Escritura de Servidumbre es contraria a la ley, y que esta es inaplicable, por cuanto lo que transfirió el Banco Santander a Airport Shoppes fue el dominio de la Parcela A-1 y con ello todos sus anejos, incluyendo la servidumbre de estacionamiento.*"

Al día siguiente, 11 de agosto de 2004, Palmas del Mar Arquitectural, parte codemandada-peticionaria, también presentó ante nos el recurso de *certiorari* KLCE-04-01096, en el cual plantea lo siguiente:

"*Erró el Honorable Tribunal de Primera Instancia al emitir un injunction preliminar y permanente en contra [de] [Palmas del Mar Architectural Board] sin demostración alguna de la configuración de los requisitos aplicables al presente caso, según nuestra ley y jurisprudencia.*"

**II**

Por estar íntimamente relacionados todos los señalamiento de errores de Palmas del Mar Properties, parte aquí demandada-peticionaria, en el recurso de *certiorari* KLCE-04-01093, procederemos a discutir los mismos en conjunto.

**A**

**Las servidumbres prediales y personales**

En general, el derecho de servidumbre se puede definir como uno subjetivo, de carácter real y perpetuo, que concede un poder para obtener un goce o utilidad de un fundo en beneficio de otro fundo ajeno. *Desarrollos de Cuidad Real S.E. v. Mun. de Vega Baja*, Opinión de 29 de enero de 2004, **2004 J.T.S. 18,** a la pág. 614. El Artículo 465 del Código Civil, 31 L.P.R.A. sec. 1631, define el concepto de servidumbre predial como un gravamen impuesto sobre un inmueble (predio sirviente), en beneficio de otro perteneciente a distinto dueño (predio dominante). Véase: *Id.*; *Soc. de Gananciales v. Mun. de Aguada,* 144 D.P.R. 114, 121 (1997).

Sin embargo, la apariencia absoluta de los términos usados en dicho artículo no corresponde con la realidad, debido a que, además de existir servidumbres de naturaleza real o predial (i.e., aquellas impuestas sobre un

predio sirviente a favor de un predio dominante), también pueden establecerse servidumbres de naturaleza personal que gravan un inmueble en consideración a una persona o una comunidad a la cual no le pertenezca la finca gravada. *Id.*; *Borges v. Registrador,* 91 D.P.R. 112 (1964). Este tipo de servidumbre es la que se conoce como *"servidumbre personal"* y la misma se encuentra codificada en el Artículo 466 del Código Civil, 31 L.P. R.A. sec. 1632. En específico, este artículo dispone que *"pueden establecerse servidumbres en provecho de una o más personas, o de una comunidad, a quienes no pertenezca la finca gravada".* *Soc. de Gananciales v. Mun. de Aguada, supra,* a la pág. 132.

Por otro lado, el Artículo 467 del Código Civil, 31 L.P.R.A. sec. 1633, dispone que las servidumbres que afectan a los terrenos pueden ser divididas en dos (2) clases; las personales y las prediales. Estos dos (2) tipos de servidumbres han sido definidos por dicho artículo de la siguiente manera:

*"[...]*

*Las servidumbres personales son aquéllas inseparablemente unidas a la persona para cuyo beneficio han sido establecidas y que terminan con su vida. Estas servidumbres son de tres clases: usufructo, uso y habitación.*

*Servidumbres reales, que son también llamadas servidumbres prediales, son aquéllas que disfruta el propietario de una finca, constituidas sobre otra propiedad vecina para beneficio de aquélla.*

*Se llaman servidumbres prediales, porque estableciéndose para beneficio de una propiedad, las obligaciones que la constituyen se prestan respecto de dicha propiedad y no respecto de la persona que sea su dueño."*

Según dijimos anteriormente, las servidumbres personales se distinguen de las prediales en que no gravan un predio a favor de otro, sino que gravan un predio a favor de una o más personas. *Soc. de Gananciales v. Mun. de Aguada, supra; Borges v. Registrador, supra,* a las págs. 121-122.

Respecto a estas servidumbres personales, ha establecido nuestro Tribunal Supremo, citando jurisprudencia española, que son irregulares o anómalas y que, al no existir norma que la regule, habrán de regirse por el título de su constitución; o sea, el acuerdo entre las partes. *Soc. de Gananciales v. Mun. de Aguada, supra,* a la pág. 122; *Borges v. Registrador, supra,* a la pág. 122. En específico, el Tribunal Supremo citó lo siguiente:

*"La servidumbre personal es la que la doctrina moderna designa además con el nombre de servidumbres irregulares o anómalas y que se establecen, no como las reales en beneficio de un predio, sino en consideración a una persona determinada (intuiti personae), y consisten, por consiguiente, en la atribución a una persona de cualquier utilidad parcial y determinada que un predio sea susceptible de proporcionar, y como nuestro Código Civil no contiene normas acerca de estas servidumbres, habrá de regirse por el título de su constitución ...".*

*Soc. de Gananciales v. Mun. de Aguada, supra.*

Por otro lado, es importante señalar que el Código Civil clasifica las servidumbres según la naturaleza o las características que presenten. Así, pues, por razón de su origen, las servidumbres se clasifican como voluntarias, por un lado, y legales o forzosas por otro lado. Artículo 472 del Código Civil, 31 L.P.R.A. sec. 1638; *Desarrollos de Cuidad Real S.E. v. Mun. de Vega Baja, supra; Soc. de Gananciales v. Mun. de Aguada, supra.* Mientras que las primeras dependen de la voluntad de los propietarios, las segundas son aquéllas cuyo título de constitución es la ley y, por lo tanto, el predio del dueño destinado a sufrirlas no puede impedir su nacimiento. *Desarrollos de Cuidad Real S.E. v. Mun. de Vega Baja, supra.*

Además, las servidumbres, por razón de su contenido, pueden ser clasificadas como positivas o negativas. En las positivas existe la obligación de hacer o de dejar hacer algo, y en las negativas se prohíbe hacer algo que sería lícito si no existiera la servidumbre. Artículo 469 del Código Civil, 31 L.P.R.A. sec. 1635.

Las servidumbres son inseparables de la finca a la que activa o pasivamente pertenecen. Artículo 470 del Código Civil, 31 L.P.R.A. sec. 1636. La venta de una propiedad para el pago de contribuciones no extinguen las servidumbres que pesen sobre la misma. *Félix del Llano & Cía. v. Plazuela Sugar Co., Inc.*, 55 D.P.R. 583 (1939); *Colón v. Plazuela Sugar Co.*, 47 D.P.R. 871 (1935).

El Artículo 530 de nuestro Código Civil, 31 L.P.R.A. sec. 1821, por su parte, dispone respecto al establecimiento de servidumbre voluntarias que *"[t]odo propietario de una finca puede establecer en ella las servidumbres que tenga por conveniente, y en el modo y forma que bien le parezca, siempre que no contravenga a las leyes ni al orden público"*.

Por último, el Artículo 482 del Código Civil, 31 L.P.R.A. sec. 1681, dispone respecto a la extinción de las servidumbres lo siguiente:

*"§1681. Modo de extinguirse*

*Las servidumbres se extinguen:*

*(1) Por reunirse en una misma persona la propiedad del predio dominante y la del predio sirviente.*

*(2) Por el no uso durante veinte (20) años.*

*Este término principiará a contarse desde el día en que hubiera dejado de usarse la servidumbre respecto a las discontinuas; y desde el día que haya tenido lugar un acto contrario a la servidumbre respecto a las discontinuas.*

*(3) Cuando los predios vengan a tal estado que no pueda usarse de la servidumbre, pero ésta revivirá si después el estado de los predios permitiera usarse de ella, a no ser que cuando sea posible el uso haya transcurrido el tiempo suficiente para la prescripción conforme a lo dispuesto en el número anterior.*

*(4) Por llegar el día o realizarse la condición, si la servidumbre fuera temporal o condicional.*

*(5) Por la renuncia del dueño del predio dominante.*

*(6) Por la redención convenida entre el dueño del predio dominante y del sirviente."* (Énfasis suplido.)

**B**
**Aspectos generales de los contratos**

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. sec. 3371; *Amador Parrilla v. Concilio Iglesia Universal*, Opinión de 23 de marzo de 2000, **2000 J.T.S. 60**, a la pág. 877. Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391; *Díaz Ayala v. E.L.A.*, Opinión de 30 de marzo de 2001, **2001 J.T.S. 49**, a la pág. 1066. Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Art. 1230 del Código Civil, *supra* sec. 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la

causa que ha de constituir el contrato. Art. 1214 del Código Civil, *id.* sec. 3401; *Prods. Tommy Muñiz v. COPAN*, 113 D.P.R. 517, 521 (1982).

Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los términos de los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210, Código Civil, *supra,* sec. 3375. Véase además: *Irizarry López v. García Cámara*, Opinión de 27 de noviembre de 2001, **2001 J.T.S. 164**, a la pág. 456.

Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, supra.* Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Art. 1207 Código Civil, 31 L.P.R.A. sec. 3372. Véase además: *Irizarry López v. García Cámara, supra; Trinidad García v. Chade,* Opinión de 18 de enero de 2001, **2001 J.T.S 10**; *Luán Investment Corp. v. Rexach Construction Co. Inc*, Opinión de 8 de diciembre de 2000, **2000 J.T.S. 196**. *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, supra.* Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. Art. 1044 del Código Civil, *supra,* sec. 2994. De conformidad con el principio rector de *pacta sunt servanda,* las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público.

## C
### Interpretación de las cláusulas contractuales

Cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, *supra* sec. 3471; *Irizarry López v. García Cámara, supra; Trinidad García v. Chade,* Opinión de 18 de enero de 2001, **2001 J.T.S. 10**, pág. 792; *Marcial Burgos v. Tomé,* 144 D.P.R. 522, 536 (1997). Aún así, hay ocasiones en que no es posible determinar la voluntad de los contratantes con la mera lectura literal de las cláusulas contractuales. *Irrizary López v. García Camara, supra.* Al respecto, el Artículo 1234 del Código Civil, *supra* sec. 3472, establece que se podrá juzgar la voluntad de los contratantes por los actos anteriores, coetáneos y posteriores al perfeccionamiento del contrato.

Al respecto, establece el Artículo 1235 del Código Civil, *id.,* sec. 3473, que *"[c]ualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar".* Además, el Artículo 1236 del Código Civil, *id.,* sec. 3474, dispone que *"[s]i alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto".* Por lo tanto, si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. *Irrizary López v. García Camara, supra.* Tampoco puede llevar a resultados contrarios al texto del contrato. Éste, repetimos, recoge la voluntad de los contratantes.

Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes, por lo que se debe cumplir con lo expresamente pactado. Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994. Por tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando dicho contrato es legal y válido, y no contiene vicio alguno. *De Jesús González v. A.C.,* 148 D.P.R. 255, 271 (1999); *Mercado, Quilinchini v. U.C.P.R.,* 143 D.P.R. 610, 627 (1997); *Cervecería Corona v. Commonwealth Ins. Co.,* 115 D.P.R. 345, 351 (1984); *Olazábal v. U.S. Fidelity, etc.,* 103 D.P.R. 448, 462 (1975).

# D

**Aplicación del derecho a los hechos del caso**

Palmas del Mar Properties, parte codemandada-peticionaria, nos plantea que incidió el foro de instancia al determinar que la servidumbre de estacionamiento voluntariamente establecida cuando le vendió el Hotel Candelero a Bluewater es una predial y no personal.

No le asiste la razón. Veamos porqué.

De conformidad con el derecho anteriormente expuesto las servidumbres prediales son gravámenes impuestos sobre un inmueble, que resulta ser el predio sirviente, en beneficio de otro perteneciente a distinto dueño, el cual se denomina como predio dominante. Artículo 465 del Código Civil, *supra*.

Del análisis ponderado de la cláusula tercera de la Escritura Número 36, sobre Constitución de Servidumbre de Estacionamiento, surge que las partes lo que quisieron constituir fue una servidumbre predial y no una personal, pues la constitución fue en beneficio del Hotel Candelero y no de sus antiguos dueños Bluewater. Como muy bien determina el foro de instancia en la Resolución aquí recurrida, la servidumbre de estacionamiento aquí en controversia se *"...constituyó en contemplación y consideración a las operaciones propias y afines de un hotel como lo era el Hotel Candelero y la finca donde enclava el mismo (estructura), cuando le fue vendido a su dueño Bluewater Palmas LTD el 20 de diciembre de 1996 por el propio codemandado Palmas del Mar Properties, Inc., y básica y principalmente para que obviamente tuviera un lugar de estacionamiento de autos para provecho de Bluewater, sus ejecutivos, empleados, y naturalmente para los huéspedes e invitados del mismo hotel."* (Énfasis en el original.) (Ap. *Certiorari*, KLCE-04-01093, a las págs. 216-217.) Además, entendemos que dicha determinación del foro de instancia también esta avalada por la octava cláusula de la Escritura de Constitución de Servidumbre de Estacionamiento.

Por tanto, en el caso de autos, entendemos que Palmas del Mar Properties y Palmas del Mar Architectural, partes aquí codemandadas-peticionarias, lo que constituyeron fue una servidumbre predial voluntaria sobre los terrenos especificados en la Escritura de Constitución de Servidumbre de Estacionamiento a favor del Hotel Candelero y el terreno en el cual enclava el mismo.

Además, Palmas del Mar Properties, parte codemandada-peticionaria, nos argumenta en su segundo señalamiento de error que erró el Tribunal de Primera Instancia al determinar que la condición resolutoria de la decimocuarta cláusula de la escritura de Servidumbre de Estacionamiento es contraria a la ley, y que esta es inaplicable por cuanto lo que transfirió el Banco Santander a Airport Shoppes fue el dominio de la parcela A-1 y con ello todos sus anejos, incluyendo la servidumbre de estacionamiento.

Este señalamiento de error tampoco se cometió.

Las partes cuando deciden entrar en una relación contractual pueden establecer los pactos, cláusulas y condiciones que entiendan convenientes, siempre y cuando los mismos no sean contrarios a la ley, la moral ni el orden público. Véase: Artículo 1207 del Código Civil, *supra*. En específico, en el área de las servidumbres, el Artículo 530 del Código Civil reconoce que todo propietario de una finca puede establecer en la finca las servidumbres que tenga por convenientes y el modo y forma que entiendan que se deben hacer, pero la constitución de la misma no puede contravenir ningunas disposición de ley.

En el caso de autos, entendemos que la cláusula decimocuarta de la Escritura de Constitución de Servidumbre de Estacionamiento no tiene el alcance resolutorio que pretende Palmas del Mar Properties que le demos a la misma. Aunque, en efecto, dicha cláusula dispone que para traspasar los derechos de la misma, entiéndase la servidumbre de estacionamiento, se necesita el consentimiento por escrito del que la otorga,

excepto que se transfiera a un afiliado del que le beneficia. No obstante, lo anteriormente expuesto entendemos que la misma esta reñida con el Artículo 470 del Código Civil, *supra*, el cual dispone que las servidumbres son inseparables de la finca a la que activa o pasivamente pertenecen. La naturaleza indivisible e inseparable de dicha servidumbre, del predio dominante, la obliga a seguir el destino de dicho predio dominante. Por tanto, para poderle dar validez a dicha cláusula, habría que haber concluido que la misma es una personal y no una real o predial como en efecto lo es.

Finalmente, concluimos al igual que lo hizo el foro de instancia que la servidumbre de estacionamiento constituida entre las partes es una real o predial, que se traspasó con el procedimiento de ejecución de hipoteca al Banco Santander y que finalmente pasó a manos de Airport Shoppes cuando esta última se la compró a dicha entidad crediticia.

## III

Luego de haber discutido los señalamientos de errores del recurso KLCE-04-01093, procederemos a discutir el señalamiento de error del recurso de *certiorari* KLCE-04-01096. A esos efectos, procederemos a exponer la norma jurídica aplicable.

## A
### Injunction

El *injunction* está regulado por la Regla 57 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, y por los Artículos 675 a 689 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 3521-3566. El Artículo 675 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3521, define el *injunction* como un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra. La Regla 57, 57.1 y 57.2 de Procedimiento Civil, *supra*, establecen tres modalidades de *injunction*. Estos son el *injunction* permanente, el *injunction* preliminar y el entredicho provisional.

El *injunction* preliminar se emite antes del juicio en su fondo y comúnmente se solicita junto con la radicación del pleito en casos de urgencia. Esto requiere del tribunal un pronto señalamiento de vista para discutir los méritos de la moción. D. Rivé Rivera, *Recursos Extraordinarios,* Ed. Programa de Educación Jurídica Continua, Facultad de Derecho de la U.I.P.R., 2da ed., 1996, a la pág. 21.

El propósito fundamental del *injunction* preliminar es mantener el *status quo* hasta que se celebre el juicio en sus méritos. *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 784 (1994). De esa forma, la orden de *injunction* preliminar evita que la conducta del demandado produzca una situación que convierta en académica la sentencia que finalmente se dicte o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Cobos Licia v. DeJean Packing Co., Inc.,* 124 D.P.R. 896 (1989).

Los factores que deberá analizar un tribunal al momento de dictar un *injunction* preliminar, sin constituir una limitación, son los siguientes: (1) si existe o no un remedio adecuado en ley; (2) la naturaleza de los daños a causársele a la parte contra la cual se solicita el recurso; (3) la naturaleza del daño que pueda sufrir el peticionario de denegarse el recurso; (4) si tales daños son irreparables o no; (5) si existe la probabilidad de que la causa se torne académica de no concederse el *injunction,* y (6) el impacto sobre el interés público de conceder o denegar el recurso. *Mun. de Ponce v. Gobernador, supra*, a la pág. 776; *García v. World Wide Entmt. Co.,* 132 D.P.R. 378, 390-392 (1992).

Al emitir un entredicho provisional, los tribunales deben ser extremadamente cuidadosos, sobrios y ponderar los intereses de todas las partes. Al concluir su análisis deben estar completamente convencidos que de esperar a la celebración de una vista de *injunction* preliminar, el remedio a concederse se tornaría académico.

*Ibid.*

Una orden de entredicho provisional es de duración limitada. No podrá exceder de diez (10) días a no ser que sea prorrogada por un período de tiempo igual. Si la orden no especifica el término de duración, vence a los diez (10) días. Véase, *Arrarás v. Tribunal Superior*, 100 D.P.R. 379, 382 n. 1 (1972).

Debido a la limitada duración de una orden de entredicho provisional, la Regla 57.2, *supra*, exige que ésta lleve constancia de la fecha y la hora de su expedición. Ello obedece a que dentro del período de diez (10) días, el tribunal puede celebrar la vista de *injunction* preliminar, la cual sí requiere notificación previa y vista, y en la cual las partes pueden aportar prueba para sostener sus respectivas posiciones. Dr. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, **Publicaciones J.T.S.**, 2000, Tomo II, a la pág. 1060.

Otro de los requisitos con los que debe cumplir la orden de entredicho provisional es que debe especificar el perjuicio que se intenta prevenir y la razón por la cual éste sería de carácter irreparable. Además, deberá expresar la razón por la cual se expidió sin brindar el beneficio de una notificación previa. *Id.*, a la pág. 1061.

Tomando en consideración que el *injunction* es un pleito incidental a la acción principal, entonces el *injunction* "*no es nada más que un remedio provisional o permanente, para hacer efectivo el derecho sustantivo que se ejercita en la demanda*". *Rivé Rivera*, *supra* a la pág. 45. Dicho lo anterior, entonces procede que definamos el último tipo de *injunction* existente, es decir, el permanente. Éste se define como el remedio concedido en la sentencia que ordena a una parte hacer o dejar de hacer algo cuando no existe un remedio eficaz y rápido para proteger los derechos del reclamante. *Id.*, a la pág. 46, n. 59. En otras palabras, la concesión de un *injunction* permanente puede ser el remedio final que se brinde en un pleito.

**B**

**Aplicación del derecho a los hechos del caso**

Palmas del Mar Architectural, parte aquí codemandada-peticionaria, nos argumenta que erró el Tribunal de Primera Instancia al dictar un *injunction* preliminar y permanente sin que se hubiera demostrado que se cumplían todos los requisitos para ello.

No le asiste la razón. Veamos porqué.

Según surge del expediente ante nuestra consideración, el Tribunal de Primera Instancia, en la Resolución aquí recurrida, lo que en efecto hizo fue dictar un *injunction* preliminar y no uno permanente. El foro de instancia, dentro de su poder discrecional, podía, como correctamente lo hizo, dictar un *injunction* preliminar para que Palmas del Mar Properties y Palmas del Mar Architectural, cesaran y desistieran de obstaculizar y entorpecer a la parte aquí demandante-recurrida, Airport Shoppes, de hacer uso de la servidumbre de estacionamiento, pues al no permitirle su uso podían verse seriamente afectados sus trabajos de remodelación y construcción. Ante este escenario y de conformidad con lo expuesto en la parte II D de esta Resolución, procedía que el foro aquí recurrido dictara un *injunction* preliminar para mantener el *status quo* de las partes hasta que se celebre el juicio en sus méritos. *Mun. de Ponce v. Gobernador, supra*. Esto evita que la conducta de los codemandado-peticionarios produzca una situación que convierta en académica la sentencia que finalmente se dicte o que se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Cobos Licia v. DeJean Packing Co., Inc., supra*.

De conformidad de lo anteriormente expuesto, es forzoso concluir que no incidió el Tribunal de Primera Instancia al declarar con lugar el *injunction* preliminar.

## IV

Por los fundamentos anteriormente expuestos, denegamos la expedición de los autos de *certiorari*.

Lo acordó y ordena Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 2004 DTA 140

**1.** El Hotel Candelero es el resultado de una agrupación de ciertas estructuras de lo que fue el proyecto de villas residenciales conocido como Beach Village, que la empresa predecesora de Palmas del Mar Properties adquirió en un procedimiento de quiebra. Por tal razón, el Hotel Candelero no cuenta propiamente con un área de estacionamiento. Debido a ello, utilizaba otras parcelas de su propiedad para uso de estacionamiento del hotel.